[No. 21722-4-I.   Division One.   November 6, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE LEWIS THOMPSON, *Appellant.*

*Marc R. Lampson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Nicole Mac-Innes, Deputy,* for respondent.

PEKELIS, J.—Lawrence Thompson appeals from the trial court's denial of his motion to sever two assault counts from a count of unlawful possession of a firearm by a felon. He also appeals from the court's determination that the counts did not encompass the same criminal conduct for purposes of calculating his offender score. We affirm.

## I

As Khim El was leaving his house for work around 3:30 to 4 a.m. on May 13, 1987, he saw that a man had broken into his car and was trying to remove his stereo. The man ran away when El yelled to his wife, Saminn Cauk, for help. El went back to the house to call the police and was standing on the porch when two other men, one carrying a gun, approached him. The man with the gun pointed it at El's head and then at Cauk as she came out onto the porch with a telephone. The man made additional threats when he realized that El was calling the police.

The man's companion eventually convinced him to leave. El saw the two men get into a large blue and white car parked about a block away. El and Cauk both recognized

their assailant as someone they had often seen in the neighborhood.

The police arrived shortly after the two men left. El described the man with the gun as a black male in his thirties wearing red shorts, a white shirt, dark jacket and plastic shower cap. This description was broadcast over police radio.

Around 4 a.m. that same morning, two officers patrolling on foot in the area saw a blue and white car being recklessly driven. Using their flashlights, they signaled the car to stop. After seeing a holster on the backseat, they asked the driver to step out of the car. The driver was wearing red shorts, a white T-shirt and blue shower cap. The officers then saw the butt of a gun protruding from underneath the driver's seat and detained the driver and two passengers for questioning. They seized the gun and noted that it was a loaded .38 revolver.

During the questioning, the officers heard over their radio that there had been a car prowl nearby which involved the use of a gun. They realized that the driver of the car they had stopped fit the description of the assailant in the other incident and responded to the dispatch. Khim El was then transported to the scene of the car stop where he identified the driver, defendant Lawrence Thompson, as the man who had assaulted him.

Thompson was charged with two counts of assault in the second degree under RCW 9A.36.020(1)(c) and one count of unlawful possession of a firearm by a felon under RCW 9.41.040. Prior to trial, Thompson moved to sever the assault counts from the felon in possession count. He argued that admission of a prior felony conviction, necessary to prove the felon in possession count, violated his right to remain silent in the assault count.[1] The trial court disagreed and denied the motion to sever.

---

[1] In order to obtain a conviction for unlawful possession of a firearm by a felon under RCW 9.41.040, the State must allege and prove a prior conviction of a crime

At trial, Khim El, Saminn Cauk and the investigating and arresting police officers testified for the State. For the defense, James Higashi testified that on the evening of May 12 Thompson came to get the car Higashi had previously borrowed from Thompson's brother. Higashi also testified that he owned a .38 revolver, which he kept loaded, and had forgotten the gun under the front seat of the car. He did not own a holster for the gun.

Thompson testified that he had never before seen the gun and holster found in the car. He also testified that he was driving around with friends during the time he allegedly assaulted Khim El and Saminn Cauk.

Two friends of Thompson, Sheila Martin and Sherry Neal, testified that they spent the evening at Thompson's home and later went for a drive with him. Neither friend was actually in Thompson's presence for the entire evening.

The jury convicted Thompson on all three counts. At the sentencing hearing, the State argued that Thompson's offender score was 6. Defense counsel argued that Thompson's offender score was 3 because all three convictions encompassed the same criminal conduct and thus counted as only one crime. The trial court ruled that although the assault and felon in possession counts were properly tried together, they did not encompass the same criminal conduct. Thus, based on an offender score of 6, Thompson was sentenced to 43 months on each of the two assault convictions and 14 months on the unlawful possession conviction.

II

Thompson contends that the trial court erred in denying his motion for severance of counts. He argues that admission of his prior conviction in the felon in possession count compelled him to give evidence against himself in the assault counts in violation of article 1, section 9 of the Washington Constitution and the fifth amendment to the United States Constitution. He also argues that the four

of violence. *Pettus v. Cranor*, 41 Wn.2d 567, 568, 250 P.2d 542 (1952), *cert. denied*, 345 U.S. 967, 97 L. Ed. 2d 1385, 73 S. Ct. 954 (1953).

prejudice–mitigating factors considered in deciding sever-
ance cases cut in his favor and demonstrate that severance
was required.[2]

■ In the court below, Thompson raised only his con-
stitutional claim that trying the counts together would
compel him to give evidence against himself. He did not
argue that he was prejudiced in any other way by the con-
tinued joinder of the offenses. Appellate courts generally
will not review an issue, theory or argument not presented
at trial. *Herberg v. Swartz,* 89 Wn.2d 916, 925, 578 P.2d 17
(1978). The purpose of this rule is "to afford the trial court
an opportunity to correct any error, thereby avoiding
unnecessary appeals and retrials." *Smith v. Shannon,* 100
Wn.2d 26, 37, 666 P.2d 351 (1983); *see also State v.
Thompson,* 47 Wn. App. 1, 14, 733 P.2d 584, *review denied,*
108 Wn.2d 1014 (1987). The trial court should be afforded
such an opportunity particularly where, as here, the issue
raised is one which was within the trial court's discretion.
We therefore decline to review Thompson's new argument
that the trial court abused its discretion in denying his
motion for severance because he was prejudiced in some
general way.

We do review Thompson's constitutional claim that
admission of the prior conviction necessary to prove the
felon in possession count compelled him to give evidence
against himself. He argues that the State should only be
able to introduce his prior conviction if he decides to tes-
tify. By trying the two counts together, he claims he no
longer has a meaningful opportunity to remain silent and
thereby keep his prior conviction from the jury.

■ In *State v. Tully,* 198 Wash. 605, 608, 89 P.2d 517
(1939), our Supreme Court held that a felon in possession
count could be joined in the same information with other

---

[2]These four factors are: (1) the strength of the State's evidence on each count;
(2) the clarity of defenses as to each count; (3) whether the trial court properly
instructed the jury to consider the evidence of each crime; and (4) the cross–
admissibility of evidence of each count under ER 404(b). *State v. Gatalski,* 40
Wn. App. 601, 607, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985).

counts and that the prior conviction necessary to prove the felon in possession count was properly before the jury at the trial on the joined counts. In a later case, *Pettus v. Cranor,* 41 Wn.2d 567, 568, 250 P.2d 542 (1952), *cert. denied,* 345 U.S. 967, 97 L. Ed. 2d 1385, 73 S. Ct. 954 (1953), the court rejected the argument that admitting evidence of the prior conviction necessary to prove a felon in possession count compelled a defendant to give evidence against himself. The court reasoned that the argument was foreclosed by *State v. Tully,* 198 Wash. at 608. *Pettus,* 41 Wn.2d at 568.

We are bound by the holding of the court in *Pettus v. Cranor, supra,* which is directly on point, and must thus reject Thompson's constitutional claim. *Accord, State v. Conley,* 3 Wn. App. 579, 581, 476 P.2d 544 (1970); *see also United States v. Daniels,* 770 F.2d 1111 (D.C. Cir. 1985); *United States v. Silva,* 745 F.2d 840, 843 (4th Cir. 1984), *cert. denied,* 470 U.S. 1031, 84 L. Ed. 2d 791, 105 S. Ct. 1404 (1985); *United States v. Valentine,* 706 F.2d 282, 290 (10th Cir. 1983); *United States v. Aleman,* 609 F.2d 298 (7th Cir. 1979), *cert. denied,* 445 U.S. 946, 63 L. Ed. 2d 780, 100 S. Ct. 1345 (1980); *United States v. Roe,* 495 F.2d 600 (10th Cir.), *cert. denied,* 419 U.S. 858, 42 L. Ed. 2d 92, 95 S. Ct. 107 (1974).

Our holding does not establish a rule that severance of a felon in possession count is never required. We simply reaffirm the rule that failure to do so in such cases is not a per se constitutional violation. As in all severance cases, the essential issue remains whether the joinder of counts unduly embarrasses or prejudices the defendant. *State v. Smith,* 74 Wn.2d 744, 754–55, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972), *overruled on other grounds in State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975). Thus, where a defendant shows that undue prejudice would result from trying the counts together, the trial court will grant a properly made motion to sever.

As discussed above, Thompson raised only his constitutional claim in the court below and made no argument going to the issue of undue prejudice. In addition, the trial court instructed the jury that it could consider Thompson's prior conviction only for purposes of the felon in possession count. We therefore conclude that the trial court did not abuse its discretion in denying Thompson's motion to sever.

## III

Thompson also contends that the trial court erred in counting his convictions for assault and felon in possession of a firearm as separate crimes for purposes of calculating his offender score. He argues that the crimes encompass the same criminal conduct and should thus be counted as one crime.

Under the SRA, current convictions are generally used as prior convictions for purposes of calculating the offender score. RCW 9.94A.400(1)(a). However,

> separate convictions will be treated as one for sentencing purposes if they arise out of the same course of conduct and one criminal event is intimately related to the other. As part of this determination,
>> trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.
>
> [*State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987).]

(Citations omitted.) *State v. Collicott*, 112 Wn.2d 399, 405, 771 P.2d 1137 (1989); RCW 9.94A.400(1)(a).

■ Here, the criminal intent required for the unlawful possession conviction was simply voluntary possession of the gun, while the criminal intent required for the assault convictions required a knowing assault of another with a weapon likely to produce bodily harm. RCW 9.41.040; RCW 9A.36.020(1)(c). Objectively viewed, the criminal intent changed from one crime to the next. In addition, since Thompson possessed the gun both before and after the assaults, the time and place of the crimes did not remain the same.

Thompson next asserts that if the counts are sufficiently interrelated to make joinder proper, they should be treated as the same criminal conduct for sentencing purposes. We find no merit in this argument. Thompson fails to recognize that the issue of whether offenses encompass the same criminal conduct for purposes of calculating an offender score involves a completely separate matter from that of joinder of offenses for the purposes of trial.

We agree with the trial court that the unlawful possession and assault counts were not the same criminal conduct. The trial court correctly counted the counts as separate crimes for purposes of calculating Thompson's offender score.

Affirmed.

SWANSON and WEBSTER, JJ., concur.